UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARLON SHANNON | No. 13 CR 535<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Defendant Marlon Shannon has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582. R. 84. That motion is granted.

## Background

A jury convicted Shannon of distributing 280 grams of crack cocaine. The Court sentenced him to 120 months' imprisonment, followed by a five-year term of supervised release. He has served more than 75 percent of his sentence, and his projected release date is April 8, 2022. One year prior to his release date (about eight months from now), Shannon will become eligible to serve a portion of the final year of his sentence in community corrections under 8 U.S.C. § 3624(c). Shannon is incarcerated at FCI Sandstone in Minnesota, which so far has reported no confirmed cases of COVID-19 among inmates or staff. However, only 43 of the 1,082 inmates incarcerated there have been tested.[1]

---

[1] *See* https://www.bop.gov/coronavirus/

## Analysis

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant, "after the defendant has fully exhausted all administrative rights to appeal" and 30 days has passed without the Bureau of Prisons filing a motion on the defendant's behalf. The government concedes that Shannon has exhausted his administrative remedies and that the Bureau of Prisons has not pursued his request for early release.

In determining whether release under § 3582 is appropriate, courts are to consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of establishing his entitlement to relief under this provision. *See United States v. Gold,* 2020 WL 2197839, *1 (N.D. Ill. May 6, 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

The Sentencing Commission's policy on sentence reduction states that "the court may reduce a term of imprisonment . . . if, after considering [the § 3553(a) factors] . . . the court determines" that: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g); and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 11B1.13. The Sentencing Commission's policy statement describes four situations constituting "extraordinary and compelling reasons." The first three are

inapplicable here. But the fourth is a catch-all provisions entrusting courts with the discretion to find that any "reason other than . . . the reasons described" in the policy statement also constitutes an "extraordinary and compelling reason" to reduce a sentence. *Id.* cmt. n. 1.

### A. Section 3553(a) Factors

In accordance with Sentencing Commission's guidance, the Court first considers whether any of the factors in § 3553(a) counsel against reducing Shannon's sentence. Those factors "require courts to consider both utilitarian and retributivist principles in imposing sentences [such that] defendants should receive sentences of adequate length relative to the severity of their crimes, and also long enough to make them examples to others who consider committing similar crimes." *United States v. Rainone*, 09 CR 206 (N.D. Ill. June 19, 2020), R. 180 at 6.

The Court first addresses "the nature and circumstances of the offense" and "the kinds of sentences available." 18 U.S.C. § 3553(a)(1), (3), (4). Shannon received a sentence longer than he might have otherwise because he was subject to a mandatory minimum sentence. Shannon's role in the crack distribution conspiracy was relatively small, as was reflected by the fact that he received only $700 of a $12,000 transaction. His ten-year sentence was harsh relative to the seriousness of his crime. Additionally, the mandatory minimum precluded the Court from considering the disparity that continues to exist in Guidelines sentences for crack and powder cocaine. Shannon's guidelines ranges would have been one-third as long if he had distributed powder cocaine instead of crack. The Court finds these circumstances

3

relevant considering Shannon has already served nearly eight years of his ten-year sentence.[2]

Furthermore, reducing Shannon's sentence under these circumstances in no way disrespects the seriousness of Shannon's crime or principles of justice in general. *See* 18 U.S.C. § 3553(a)(2)(A). The fact that Shannon has served a significant portion of his sentence also means that his early release will not diminish the deterrent effect of his original sentence. *Id.* (a)(2)(B). Indeed, the fact that Shannon is eligible for community confinement in only eight months means that the deterrent effect of his sentence has largely been realized.

Section 3553(a) also requires the Court to consider the risk of recidivism in order "to protect the public from further crimes." *Id.* (a)(2)(C). Considering Shannon's age there is little risk that he will commit more crimes. The Sentencing Commission finds that only about twelve percent of people aged 60-64 commit new crimes after release. Having already spent the majority of his adult life incarcerated, the Court finds it unlikely that Shannon will again risk the loss of his freedom during the last phase of his life by committing crimes in the future.

Lastly, § 3553(a) requires the Court to consider "the need to for the sentence imposed to provide the defendants with needed . . . medical care . . . in the most effective manner." *Id.* (a)(2)(D). Like many correctional facilities during this

---

[2] By contrast, defendants' whose motions for compassionate release the Court has denied during the pandemic had served only 20% and 50% of their sentences. *See United States v. Lattas*, 13 CR 463 (N.D. Ill. May 7, 2020), R. 348; *United States v. Friday*, 16 CR 633 (N.D Ill. May 13, 2020), R. 96.

pandemic, FCI Sandstone where Shannon is incarcerated is on lockdown to help prevent the spread of COVID-19 into the facility. The lockdown limits Shannon's ability to exercise which is necessary for him to manage his hypertension, pre-diabetes, and obesity. His release from a prison on lockdown will enable Shannon to more effectively address his health conditions.

Therefore, the factors in § 3553(a) suggest that a reduction in Shannon's sentence would be appropriate.

### B. Extraordinary and Compelling Reasons

A motion to reduce a sentence may only be granted on a showing of "extraordinary and compelling reasons." This Court and many others around the country have found that the mere existence of the COVID-19 pandemic in the country generally, or in a particular correctional facility, does not constitute an "extraordinary and compelling reason" to reduce a sentence. *See*, *e.g.*, *United States v. Friday*, 16 CR 633 (N.D. Ill. June 16, 2020), R. 101; *United States v. Allegra*, No. 15 CR 243 (N.D. Ill. April 13, 2020), R. 232 at 7 (quoting *United States v. Eberhart*, 2020 WL 1450745, *2 (N.D. Cal. Mar. 25, 2020)); *Gold*, 2020 WL 2197839 at *2; *United States v. Munguia*, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020). A contrary finding would imply that all inmates should be released, which is neither appropriate nor feasible. And COVID-19 poses minimal risk of serious health complications to the vast majority of people.

However, courts have also found that an extraordinary and compelling reason to reduce an inmate's sentence can arise if the inmate's underlying health condition

5

makes him particularly vulnerable to serious health complications should he contract COVID-19. While the prison where Shannon is incarcerated has yet to report a COVID-19 infection among inmates or staff, it is generally acknowledged that it is impossible to follow social distancing guidelines in a prison setting. In some cases, the government has conceded that inmates with health conditions associated with serious illness from COVID-19 should be granted compassionate release. *See Wise v. United States*, 2020 WL 2614816, at *7 (D. Md. May 22, 2020) ("[J]ust last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release."); *United States v. Wright*, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) ("The Government now agrees, based on recent Department of Justice guidance, that Wright's diabetes condition, and perhaps other medical conditions she presently has, could constitute "extraordinary and compelling reasons" under the circumstances of the COVID-19 pandemic."). And courts have granted such releases, even from prisons that have yet to report infections among staff or inmates. *See, e.g.*, *United States v. Feucht*, Case No. 11-cr-60025 (S.D. Fla. May 28, 2020), R. 53 (granting compassionate release despite no confirmed cases at FCI Jessup because "[z]ero confirmed cases is not the same thing as zero COVID-19 cases"); *United States v. Atkinson*, 2020 WL 1904585, *2-4 (D. Nev. Apr. 17, 2020); *United States v. Amarrah*, 2020 WL 2220008 (E.D. Mich. May 7, 2020); *United States v. Ben-Yhwh*, 2020 WL 1874125 (D. Haw. Apr. 13, 2020).

Until recently, none of Shannon's health conditions, taken individually, was considered by the Centers for Disease Control (the "CDC") to create a higher risk for severe illness from COVID-19. According to the CDC, COVID-19 poses a greater risk to people who are 65 or older, have diabetes, are severally obese, or have pulmonary hypertension (which is a narrowing of the arteries connecting the heart and lungs). Shannon is 61 years old, has pre-diabetes, is moderately obese, and has essential hypertension (or high blood pressure).

Indeed, this Court has previously denied a motion for compassionate release by a defendant with health conditions comparable to Shannon's. *See United States v. Lattas*, 13 CR 463 (N.D. Ill. May 7, 2020), R. 348.[3] But that defendant was only 43 years old. While Shannon's age does not put him in the CDC's high-risk category, he is close, being over the age of 60, and the CDC's guidelines state that "the older you are, the higher your risk of serious disease."[4] Furthermore, the CDC's current guidelines now include Shannon's level of obesity (a body mass index of 30 or higher) in the category of health conditions that pose an increased risk of severe illness from COVID-19.[5] The CDC's data shows that both hypertension and obesity materially

---

[3] A renewed motion has been made in the *Lattas* case and further briefing has been requested.

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

7

increase the risk that a person who contracts COVID-19 will be hospitalized,[6] and that hypertension materially increases the chance of death from COVID-19.[7] Additionally, at least one study has found that pre-diabetes increases the risk of severe illness from COVID-19.[8] A number of courts have reduced the sentences of defendants with pre-diabetes when combined with other risky health conditions like Shannon's. *See United States v. Sosa*, 2020 WL 2227038, at *1 (D.N.H. Apr. 21, 2020), *report and recommendation adopted*, 2020 WL 2219173 (D.N.H. May 6, 2020); *United States v. Dhavale*, 2020 WL 1935544, at *6 (D.D.C. Apr. 21, 2020); *United States v. Readus*, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020); *United States v. Coles*, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020).

Generally, the Court follows the CDC's guidelines in analyzing whether a defendant's health condition creates an extraordinary and compelling circumstance in the context of the COVID-19 pandemic. And if Shannon suffered from a single health condition and was younger, the Court would deny his motion, as it has done with respect to other defendants. *See United States v. Lattas*, 13 CR 463 (N.D. Ill. May 7, 2020), R. 348; *United States v. Friday*, 16 CR 633 (N.D Ill. May 13, 2020), R. 96. Defendants who suffer from manageable health conditions, especially at a younger age, do not present extraordinary and compelling circumstances. But

---

[6] *See* https://gis.cdc.gov/grasp/COVIDNet/COVID19_5.html

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html

[8] Smith, Stephen, et al., *Impaired glucose metabolism in patients with diabetes, prediabetes and obesity is associated with severe Covid-19,* medRxiv (2020) available at: https://www.medrxiv.org/content/10.1101/2020.06.04.20122507v1.full.pdf

Shannon's combination of health conditions at a relatively older age, describe a person who is in generally poor health, and likely unable to fend off an infection of COVID-19. The risk posed by requiring a person with such characteristics to remain in a facility where he cannot avoid close contact with large groups of people is an extraordinary and compelling reason to reduce his sentence.

### C. Danger to the Community

Lastly, the Sentencing Commission also advises courts to consider whether an inmate seeking early release poses a danger to the community, applying the factors in 18 U.S.C. § 3142(g). Although crack cocaine is a cause of much suffering in Chicago, Shannon's crime was not violent. And although he was convicted of a murder that occurred in 1977, because of its age, the Court gives that crime minimal weight in determining whether Shannon poses danger to the community today. As discussed with respect to Shannon's risk of recidivism, his age suggests that he poses little to no danger to the community. The Court has no basis to consider him a risk to commit further violent crimes.

### Conclusion

The combination of Shannon's age and multiple risky health conditions create an extraordinary and compelling reason to reduce his prison sentence. Additionally, the § 3553(a) factors counsel in favor of a reduction, primarily because Shannon has nearly completed his sentence, which was unduly long to begin with due to a mandatory minimum. The Court modifies his sentence to time served and orders his

immediate release. All other aspects of his criminal conviction and sentence remain unmodified.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: June 26, 2020

10